1

2

3

4

5

6

7

8    **IN THE UNITED STATES DISTRICT COURT**

9    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   THOMAS LE'ROY HENNAGAN, JR.,          No. CIV S-08-1913-MCE-CMK-P

12                    Plaintiff,

13            vs.                          <u>FINDINGS AND RECOMMENDATIONS</u>

14   LYNN FRANK, et al.,

15                    Defendants.

16   _____/

17            Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is plaintiff's amended complaint (Doc. 5).

19            The court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

21   § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22   malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23   from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24   the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26   This means that claims must be stated simply, concisely, and directly.  <u>See McHenry v. Renne</u>,

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants:  Frank, Ryan, Wilson, Porter, Stern, Pfaff, Reysner, Baginski, and Oleachea.  Plaintiff states that this is an action "against the Sacramento County Department of Health and Human Services (DHHS) and their agents."  He also states that this action proceeds on his behalf and on behalf of his daughter "Charlotte R," a minor born on June 18, 1992.  Plaintiff claims that "defendants have knowingly, willingly, and maliciously denied them 'due process of law' and 'equal protection under the law' by enforcing a different rule relative to Plaintiffs' attempts to practice the religious teaching of the religious organization known world-wide as Jehovah's Witnesses of the Watchtower Bible and Tract Society of New York."  He states that he "brings this action on behalf of himself and his minor child, contending that the defendants have collectively subjected his minor child to unnecessary, wonton, malicious, sadistic psychological distress causing irreparable injury to both Plaintiff Hennagan and Plaintiff Charlotte R."

Plaintiff alleges the following facts:

1.    Charlotte R. was declared a dependent of the Sacramento County Superior Court on October 24, 2006, based on allegations, which plaintiff admits were found to be true, that he committed lewd and lascivious acts upon her;

2.    Charlotte R. was committed to the custody and care of DHHS;

3.      Plaintiff was permitted "supervised letter contact" with Charlotte R., with letters to be reviewed by a social worker or therapist and, if appropriate, forwarded to the child;

4.      On August 10, 2006, Charlotte R. wrote a letter which stated:

I wish you knew how much I long to hear your voice over the telephone or for that matter hear your voice period. These were and are the only joys of my life, for through them I am able to complete each hour, day and even second. Unfortunately, the long period between our contact are full of silence. These are dark and desperate times filled with loneliness because of my long separation from you. During these periods, my heart rests blankly with hope that, once again and very soon, I will be hearing your voice. This is what makes me want my life to go on.

It seem though I have not heard from you in ages. Each day that passes is becoming more difficult and longer to bear. If I don't hear from you soon, I don't think there's going to be any more me. Over and over again I say to myself if I hadn't asked for that stupid phone neither one of us would be in this situation. Our failure to keep in contact is hurting me.

I will always love you know matter how far apart we are. With a whole lot of love, Charlotte. P.S. I did not forget your b-day. Happy B-lated Birthday.

5.      On August 20, 2006, Charlotte R. wrote another letter which stated:

I'm not sure if I'm suppose to be writing you or not, but I cannot live my life like this. I just talked to my grandpa he was like there not sure if you're my father or if you're my babies father. I didn't answer any of his questions, then he said you wrote my uncles and aunts and asked them to let me go down their to teach me their Jehovah ways. He then said they are not willing to be a part of my sinful like, meaning he did not want to get involved in this sin.

I have my life, no ones on my side. Tenesha said if I move with her I cannot write you. Niecheia, I don't want to go down that road again. I miss you very badly. I'm trying to do this live life. It's just way too hard without you. I have horrible thoughts of ending my life everyday. I read my Bible and pray every night. It doesn't seem like God is helping me. The only thing anyone can do to help me is give you back to me. I'm trying to wait til court on the 29th to see you one more time. <u>If they don't give us contact, meaning me being able to see you when I want then</u>. . . there is one thing I want you to know, I <u>truly</u> love you, know matter what happens with my and my life. No one cared for me, not your family or Momma Lisa's.

3

1                  You're the only one, now there taking you from me.  Love,
Your daughter, Charlotte Hennagan.  I know I'm your
2                  daughter.

3      6.      Upon receiving these letters, plaintiff sent them to the court;

4      7.      Plaintiff states that the letters were made available to the defendants but
that they "summarily and collectively ignored Plaintiff Charlotte R. cries
5            for help and her overwhelming will to have supervised contact with
Plaintiff Hennagan" in order to destroy the father-daughter relationship;
6            and

7      8.      Plaintiff has sent "numerous letters and religious attachments from the
religious organization Jehovah's Witnesses to the defendants for delivery
8            to his minor child, Charlotte R" but she has not received any of them
because "defendants have deemed all of Plaintiff Hennagan's
9            correspondences 'highly inappropriate' and have subsequently sought to
terminate Plaintiff Hennagan's letter writing contact through the court"

10

11    Plaintiff contends that documents were "fraudulently produced" in order to convince the court to

12    terminate his visitation privileges.  Plaintiff claims that defendants' denial of contact with his

13    daughter has caused Charlotte R. to become troubled.  He also alleges that the lack of contact has

14    prevented him from attempting to help Charlotte R. through "the teachings of his religion,

15    Jehovah's Witnesses."  Plaintiff seeks, among other things, an order from this court directing

16    defendants to allow supervised letter contact with his daughter.

17                Documents attached to the complaint, and to which plaintiff refers, shed

18    additional light on the nature of plaintiff's claims.  These documents are summarized

19    chronologically as follows:

20              December 16, 2006    Letter from Victoria Deane of the DHHS to plaintiff.  Ms.
Deane summarized DHHS' role in light of the relevant
21                               court orders as follows:

22                                  Sandra Gomez was the family reunification
social worker.  Your case is no longer in
23                                  family reunification because the court
ordered no services.  Your daughter's
24                                  permanent placement social worker is
Jennifer Baginski, 875-6056.  Services were
25                                  not ordered for you and therefore, you do not
have a social worker.  Ms. Baginski is
26                                  ordered to review your letters to determine if

| | | |
|---|---|---|
| 1<br>2<br>3 | | they are appropriate to be forwarded to your daughter.  If she assesses that they are appropriate they will be forwarded.  She has not been ordered to keep you apprised of your daughter's progress/welfare. |
| 4<br>5<br>6<br>7<br>8 | October 9, 2007 | Excerpts of "Post Permanent Review Report" by DHHS social worker.  The report indicates that "[t]he majority of the letters that are written to CHARLOTTE are inappropriate and, therefore, not given to CHARLOTTE to read."  The report also recommend that all contact between plaintiff and the minor be discontinued "[d]ue to the continued highly inappropriate nature of the letters, despite the admonishment to the father regarding letter content. . . ." |
| 9<br>10<br>11<br>12 | October 10, 2007 | Letter from plaintiff to Natalie S. Lindsey, referee of the Sacramento County Superior Court, regarding a writ of mandate filed in the state court.  Plaintiff states that the writ of mandate "addresses the failure and/or refusal of the DHHS or it agents to comply with a Juvenile Court order granting the undersigned 'supervised' letter contact with the minor, Charlotte R." |
| 13<br>14 | November 29, 2007 | Letter from David Pfaff to plaintiff regarding the status of the state court juvenile case.  Mr. Pfaff states: |
| 15<br>16<br>17<br>18<br>19<br>20<br>21<br>22 | | . . . [O]n balance, I believe that I have some good news for you given the status and posture of this case as I inherited it.  The Department's position appeared intractable at first.  I was informed that the Department would insist that you should have no further communication with your daughter Charlotte.  This would leave us no recourse but to set a contested hearing on the issue.  However, during case conferencing as well as on the record, I pointed out to all concerned that to my knowledge you have never been told specifically what is objectionable to the Department in your correspondence with Charlotte. |
| 23<br>24<br>25<br>26 | | I believe that this failure on the part of the Department potentially implicates Due Process and First Amendment issues of significance given the fact that you have attempted to send Charlotte articles authored by the Watchtower Organization.  This is why I indicated to you in our first conversation that I did not believe that the |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Department would ever voluntarily state their objections in writing to your correspondence.  I have not raised the Constitutional challenge as yet, because Referee Lindsey ordered the Department to provide a written list of at least five reasons your correspondence  and/or attachments are objectionable.

December 11, 2007    Psychological progress report prepared for DHHS social worker Jennifer Baginske.  The report states:

Charlotte is challenged in session with being open and honest about her true cognitions. The client accepts most of the responsibility for the "relationship" and appears to be in denial about the abusive nature of the "relationship."  The client can present as guarded in sessions when discussing her past history.  However the client was able to openly discuss how she perceived the "relationship."  The client appears anxious during these sessions and she discloses limited feelings and interactions.  This impedes the effectiveness of therapy services.

The client currently has letter contact with her biological father who sexually molested her and this appears to be contributing to ongoing confusion for the client.  The client appears to be in a fantasy state as related to the relationship that previously existed with her biological father that resulted in the sexual abuse.  The client is currently unable to separate her perception of the relationship from the sexual molestation.  Continuing letter contact can result in the client's continued denial, self blame, inability to heal, decreased self esteem, and could result in the client having thoughts of suicidal ideations as previously experienced.

The therapist who prepared the report recommended, among other things, that the letter contact be halted "due to the client's current inability to recognize the inappropriate nature of her 'relationship' with her father and the fact that the father's previous letters were deemed inappropriate based on the romanticized tone expressed in the letters."

December 20, 2007    Letter from Mr. Pfaff to plaintiff regarding the status of the

6

| | | |
|---|---|---|
| | | juvenile case.  Mr. Pfaff states that "the Department did not cooperate with Referee Lindsey's order that they provide you with a list of at least five areas of concern regarding your correspondence with your daughter." |
| | March 12, 2008 | Letter from plaintiff to Sacramento County District Attorney's Office in which he contends that this court-appointed attorney, David L. Pfaff, and officials at DHHS conspired to "fraudulently produce" documents, including the therapist's report summarized above, to influence the court. |
| | March 20, 2008 | Letter from plaintiff to Susan Aguilar, referee of the Sacramento County Superior Court.  Plaintiff states that the issue "is the Department's determination to terminate my letter contact with my child based . . . on their contention that my letters to my child in their opinion are 'highly inappropriate.'" |
| | May 8, 2008 | Plaintiff's motion for an evidentiary hearing in the Sacramento County Superior Court regarding "fraudulent document in juvenile case number:  206365." |

It is noteworthy that plaintiff does not provide copies of any of the letters and/or religious attachments he attempted to send to his daughter but which were deemed inappropriate.

## II.  DISCUSSION

The basis of plaintiff's complaint is a dispute with DHHS in the context of a state court juvenile proceeding over the scope of visitation with his daughter, Charlotte R.  It is unclear whether plaintiff is still permitted letter visitation, whether DHHS is providing plaintiff with its reasons for not forwarding letters to Charlotte R., or whether all visitation has been terminated by the state court.  It is clear that, as of July 2008, the state court case was ongoing.

Various abstention doctrines counsel against this court's involvement at this time. Under the Rooker-Feldman abstention doctrine, federal courts lack jurisdiction to hear matters already decided in state court.  See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  The doctrine applies in cases "brought by state court losers complaining of injuries caused by state court judgments rendered

1 | before the district court proceedings commenced and inviting district court review and rejection

2 | of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).

3 | This doctrine would apply in this case to the extent the state court has already ruled on the issue

4 | of the scope of plaintiff's visitation.  Under the Younger abstention doctrine, federal courts are

5 | barred from hearing a civil rights claim arising from an ongoing criminal prosecution.  See

6 | Younger v. Harris, 401 U.S. 37 (1971).  While the state court proceedings in this case are

7 | juvenile and, thus, not criminal in the true sense, the notions of comity implicit in the Younger

8 | abstention doctrine nonetheless apply.  Specifically, to the extent the state court has not had a

9 | chance to consider plaintiff's constitutional arguments, it should have the first chance to do so

10 | and, if appropriate, correct any violation.

## III. CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that this case be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 12, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE